# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

MICHAEL KING and
CHERYL KING

    Plaintiff,

    v.                                                        Case No. 05-C-1183

WISCONSIN PIPE TRADES HEALTH FUND,

    Defendant.

## DECISION AND ORDER
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On October 7, 2005, the plaintiffs filed this action in the Circuit Court for Waukesha County, Wisconsin, Small Claims Division, against defendant Wisconsin Pipe Trades Heath Fund, alleging that the defendant wrongfully denied them insurance coverage for Cheryl King's dependent son, Ryan Rampetsreiter. On November 14, 2005, the defendant removed the case to federal court. The defendant has filed a motion for summary judgment which is fully briefed and will be addressed herein.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht,

763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added). Evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F. 2d 845, 849 [7th Cir. 1992]; Fed. R. Civ. P. 56 [e]).

**RELEVANT UNDISPUTED FACTS[1]**

The Wisconsin Pipe Trades Health Fund is a multi-employer welfare plan within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001 et. seq. The Fund is governed by a Board of Trustees consisting of both management and union trustees and is administered by Benefit Plan Administration of Wisconsin, Inc. Benefit Plan Administration grants and denies claims for benefits in its capacity as the representative of the Board of Trustees.

The Trustees administer the Trust Fund pursuant to a Trust Agreement, entitled Restated Agreement and Declaration of Trust Steamfitters Local Union No. 601 Welfare Fund. The Trust Agreement empowers the trustees to adopt bylaws and promulgate rules and regulations, which they deem necessary for the Trust Fund's administration.

Pursuant to its powers under the Trust Agreement, the Health Fund trustees adopted and prepared both a Plan Document and a Summary Plan Description (SPD) that explains to members their benefits under the Health Fund. The Health Fund mails a copy of the SPD to all new members, as well as to all existing members upon request. The Trust Agreement states in relevant part:

> Subject to the stated purposes of the Fund and the provisions of this Agreement, the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters. They shall have full power to construe the provisions of this Agreement, the terms used herein and the by-laws and regulations issued thereunder. Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon all of the parties hereto and the beneficiaries hereof.

---

[1]As a general matter, unless accompanied by citation, the relevant facts are taken from the defendant's proposed findings of fact which are not disputed, the deposition testimony of plaintiff Cheryl King and any other admissible evidence submitted by the parties.

(Affidavit of Jackie Trad [Trad Aff.], Exh. 1 at 36-37).

The Health Fund's Plan Document gives trustees and the plan administrator discretion to administer the plan. It states in relevant part:

> The plan shall be interpreted and applied in the sole discretion of the Board of Trustees (or its delegate, including but not limited to, its Plan Administrator) and such decision shall be final and binding upon all persons and Participants covered by the Plan who are claiming any benefits under the Plan.

(Trad Aff., Exh. 2 at VII-1a). The Health Fund's Plan Document reserves the same discretion to the Board of Trustees for denying claims for benefits:

> Benefits under this Plan shall be paid only if the Board of Trustees (or its Plan Administrator) decides in its (his) discretion that the applicant is entitled to them.

(Trad Aff., Exh. 1 at VII-1).

The Summary Plan Description similarly notifies all participants and beneficiaries that:

> Benefits under this Plan will be paid only if the Board of Trustees (or its Plan Administrator) decides in its discretion that the applicant is entitled to them. The Plan will be interpreted and applied in the sole discretion of the Board of Trustees (or its delegate, including but not limited to, its Plan Administrator). Such decision will be final and binding on all persons covered by the Plan who are claiming any benefits under the Plan.

(Trad Aff., Exh. 3 at 55).

The Health Plan provides health insurance coverage for active eligible employees and their eligible dependents. (Trad Aff., Exh. 2 at II-1) Dependents include the eligible employee's spouse and unmarried child or children. (Trad Aff., Exh. 3 at 56). Under both the Plan Document and the SPD, stepchildren become eligible dependents only if they are:

> children by a former marriage of the eligible employee's spouse and who are solely dependent on the eligible employee for support, unless evidence is presented to the Fund that the divorce judge obligates the natural parent(s) for medical bills and they are properly claimed by the eligible employee on IRS tax filings.

- 4 -

(Trad Aff., Exh. 2 at I-4, 5; Exh. 3 at 57). The Health Fund only covers medical services that are both recommended/approved by a physician and medically necessary.

Tom and Cheryl Rampetsreiter were divorced on April 27, 2001. The dissolved marriage produced four children: Ryan, Kelly, Jenna, and Dustin. Ryan Rampetsreiter was born on November 27, 1985. He turned 18 on November 27, 2003, but did not graduate from high school until 2004.

When the divorce of Tom and Cheryl Rampetsreiter became final, the divorce court adopted without modification a Marital Settlement Agreement as the judgment of the court. The Marital Settlement Agreement stated that Tom Rampetsreiter was required to "pay child support of 31% of gross monthly income or $1,667.00 per month, whichever amount is greater." (Affidavit of Yingtao Ho [Ho Aff.], Exh. 4 at 1). The child support payment was supposed to cover all four of Tom and Cheryl Rampetsreiter's children, including Ryan. Tom Rampetsreiter's legal obligation to provide child support for his son, Ryan, did not expire until Ryan's graduation from high school in 2004.[2]

Paragraph 5 of the Marital Settlement Agreement states:

That the respondent (Tom Rampetsreiter) shall maintain his current policy of health insurance and shall name the minor children as insured thereon and shall be the primary health care provider.

That the respondent shall be liable for all hospital, medical, dental, orthodontist and any other related expenses not covered by insurance for the minor children of the parties.

---

[2]The plaintiffs advise that the original order requiring Tom Rampetsreiter to pay $1,667.00 was changed as of January 2003, to $825.00 per month. Mr. Rampetsreiter was also "ordered to pay $400.00 per month in arrears." (Plaintiffs' Response to Defendant's Motion for Summary Judgment at 1).

- 5 -

(Trad Aff., Exh. 4 at 2). When drafting the divorce decree, Cheryl King intended to impose on Tom Rampetsreiter an obligation to always provide primary insurance for his children (Mr. King's stepchildren), rather than only an obligation to maintain his then current policy of health insurance.

In 2003 and 2004, Tom Rampetsreiter made a "few" child support payments in each year. (Deposition of Cheryl King [King Dep.] at 17). As of April 2006, Tom Rampetsreiter was "$25,000 behind in child support payments." (King Dep. at 15).

After Ryan Rampetsreiter went off to college in the fall of 2004, Cheryl King received a notice in the mail informing her of a decrease in Tom Rampetsreiter's child support obligations. The Wisconsin Child Support Program has taken legal steps to force Tom Rampetsreiter to catch up on paying his child support obligations.

Sometime after the divorce, the plaintiffs were married. As of the summer of 2003, Mr. King worked in a non-union position and had medical coverage for his stepchildren through York Insurance. In the summer of 2003, Mr. King contemplated switching back to a union position with his employer, which would require him to receive health insurance coverage through the Health Fund.

In the fall of 2003, Ryan Rampetsreiter injured his knee. Some time later, Michael King and Cheryl King called the Health Fund, and spoke to an employee of the Health Fund. (King Dep. at 23). During the telephone conversation, the Kings told the Fund employee that Mr. King was thinking about switching positions, that the insurance they had at the time covered Mr. King's stepchildren, that Mr. King's stepson had knee surgery, and that the Kings were concerned about the medical bills being covered. The Kings also told the Health Fund

employee that they wanted to make sure the Health Fund would cover Mr. King's stepchildren. (King Dep. at 35).

During the telephone conversation, the Kings did not advise the Fund employee that Tom Rampetsreiter was still paying some child support for Ryan, nor did the Fund employee ask about any child support. They did not provide a copy of the divorce decree to the Fund, nor did the employee ask for a copy. The Kings did not read paragraph 5 of the Marital Settlement Agreement, which outlined Tom Rampetsreiter's obligation to provide health insurance to his children, to the Health Fund employee. The employee "never got into that." (King Dep. at 29).

During the phone conversation, there was no discussion with the Health Fund employee as to who was obligated to provide insurance for Mr. King's stepchildren under the divorce decree. Nor was there any discussion about whether Mrs. King was obligated to provide secondary insurance coverage for her children. At the end of the conversation, the Health Fund employee told the Kings that Mr. King's stepchildren would be covered by the Health Fund.

Ryan Rampetsreiter had knee surgery at the end of October, 2003. The knee surgery was paid for by Mr. King's non-union York Insurance. Following knee surgery, Ryan had physical therapy three times per week during the time period between November 1 and December 11, 2003, at a total cost of $3,620.00.

On November 3, 2003, Benefit Plan Administration mailed a cover letter, the Wisconsin Pipe Trades Health Fund Participant and Dependent Information Form, and a copy of the Summary Plan Description to Mr. King. Mr. King returned the completed information form to Benefit Plan Administration on November 25, 2003. Mr. King requested coverage for himself,

his wife, his two natural children and his four stepchildren. On the same day, Benefit Plan Administration also received a copy of Tom and Cheryl Rampetsreiter's Marital Settlement Agreement.

On the information form, Mr. King notified the Health Fund that he was responsible for providing insurance for his stepchildren. He also stated: "Their natural father doesn't have insurance for them yet. He has a new job." (Yo Aff., Exh. 3 at 2). Mr. King also advised that the stepchildren were not covered under any other group insurance plan, but stated that "if they become insured under their dad we will inform you immediately." Id. The information form also contained the birth dates of each of Mr. King's four stepchildren and two natural children. Id.

Benefit Plan Administration completed processing Mr. King's information form on December 9, 2003. The Benefit Plan Administration, in its capacity as representative of the Board of Trustees, decided to provide coverage for Mr. King, his wife, and two natural children, retroactive to October 1, 2003. The Fund also decided to deny coverage to Mr. King's four stepchildren, including Ryan Rampetsreiter.

On December 11, 2003, the Health Fund mailed a letter to Mr. King, denying his request for Health Fund coverage for his four stepchildren. The letter explained that coverage was denied for the stepchildren because:

> The Wisconsin Pipe Trades Health Fund covers stepchildren when the child is solely dependent on the eligible employee for support and is properly claimed by the employee on IRS tax filings. This Plan definition is further described on page 57 of your Summary Plan Description (SPD).

(King Dep. at 7, Exh. 2).

- 8 -

After December 11, 2003, neither Michael King nor Cheryl King have made a further application to the Health Fund to provide coverage to Ryan Rampetsreiter. They also have not notified the Health Fund of any changed circumstances that would make Ryan Rampetsreiter eligible for Health Fund coverage.

After the Benefit Plan Administration decided to cover Mr. and Mrs. King and Mr. King's two natural children, it mailed two insurance cards to the Kings. The cards contained a blank line for "Participant's Name" and "Social Security Number." (King Dep. at 21 and Exh. 5). The cards did not indicate who was covered under the insurance. (King Dep., Exh. 5). The back of each insurance card contained a notice to potential medical care providers which states that possession of the card does not guarantee Health Fund coverage.

Mr. King appealed the Benefit and Plan Administration's decision to deny coverage on February 23, 2004. The letter stated in relevant part:

> This fall when I was contemplating a change in position within my company there were many facets that entered into the equation. Health care was a major concern. My new wife has four children, who for the past few years have not been covered properly for medical care. Their dad switched jobs frequently and sporadically had no health insurance. My wife was self employed and had no insurance. Until our marriage my step children were covered under Badger Care. We were at ease knowing they finally had proper coverage through Unicare and didn't want to risk them losing their coverage. So BEFORE I accepted a new position at York I made a phone call to the Health Fund to make sure my step-children would have adequate coverage. This was also especially important at this time because my step-son Ryan had incurred a severe knee injury just months before. Knowing he needed surgery, the conversation with the health fund was crucial since the existing insurance through York covered Ryan, his pending surgery and any possible physical therapy. I was very clearly told by the Health Fund that your insurance would be secondary to any other existing insurance but that the kids would in fact be covered.
>
> Well, I was improperly informed by the health fund. Because I was told my step children would be covered, we scheduled the surgery and I accepted the new position at work. . . . Their defense was that they sent us a package of all

- 9 -

> insurance coverage information and that we should have read what was sent. . . . They also said that the step-children need to be dependents. For the year of 2003 they were my dependents. (I will provide a copy of my taxes when they are complete.)

(Trad Aff., Exh. 5 at 1). On February 25, 2004, the Benefit Plan Administration prepared a fact sheet regarding Mr. King's appeal. (Trad Aff., Exh. 6).

On April 29, 2004, the Health Fund Trustees met to consider Mr. King's appeal. The Board of Trustees denied the appeal. On May 4, 2004, the Health Fund mailed a letter to Mr. King, notifying him of its decision to deny his appeal. The letter stated in relevant part:

> Based upon the divorce decree requiring the natural father to provide health coverage and the Plan's definition of stepchildren excluding children provided coverage by a natural parent(s) under a divorce decree (see dependent definition paragraph D), the Trustees have denied your appeal.

(King Dep. at 34-35, Exh. 6; Trad Aff., Exh. 7).

## **ANALYSIS**

The defendant asserts that the arbitrary and capricious standard of review is the appropriate standard to use when reviewing the trustees' decision to deny coverage for Ryan Rampetsreiter's physical therapy. The defendant asserts that under both the Plan Document and the Summary Plan Description, stepchildren qualify as children, and become eligible for coverage by the Fund only if they are solely dependent on the eligible employee for support. The defendant further asserts that Ryan Rampetsreiter did not solely depend on Michael King for support and, therefore, the trustees' decision was neither arbitrary nor capricious. Finally, the defendant maintains that even if an equitable estoppel claim is available against the Fund, the plaintiffs can not establish a knowing misrepresentation in writing and, therefore, can not establish an equitable estoppel claim.

- 10 -

In response, the plaintiffs assert that they could not determine, by reading the Summary Plan Description, whether Mr. King's stepchildren would be covered by the Health Fund if Mr. King switched to a union position with his employer. Mr. King telephoned the Health Fund and the Health Fund's employee told Mr. King that his stepchildren would be covered by the Health Fund. The plaintiffs maintain that they relied on this information in deciding that Mr. King would switch positions.

ERISA provides comprehensive regulation of certain employee benefit plans. Panaras v. Liquid Carbonic Industries Corp., 74 F.3d 786, 788 (7th Cir. 1996). Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), creates a claim to "recover benefits due to him under the terms of his plan." The decision to deny benefits is reviewable de novo, unless the plan provides express discretion to the plan administrators to determine eligibility for benefits. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co., 489 U.S. at 115.

In determining whether a plan conferred discretion on the plan administrator, a court reviews the language of the plan de novo. Ramsey v. Hercules, Inc., 77 F.3d 199, 205 (7th Cir. 1996). "The key question" when reviewing a decision of a plan administrator is "whether the administrator has discretion under the plan," not whether it made a factual determination or a legal interpretation. Id. at 204.

- 11 -

Case 2:05-cv-01183-PJG   Filed 03/27/07   Page 11 of 16   Document 35

In this case, the Health Fund's Plan Document states in relevant part:

> The plan shall be interpreted and applied in the sole discretion of the Board of Trustees (or its delegate, including but not limited to, its Plan Administrator) and such decision shall be final and binding upon all persons and Participants covered by the Plan who are claiming any benefits under the Plan.

(Trad Aff., Exh. 2 at VII-1a). The Plan Document further provides:

> Benefits under this Plan shall be paid only if the Board of Trustees (or its Plan Administrator) decides in its (his) discretion that the applicant is entitled to them.

(Trad Aff., Exh. 1 at VII-1). Thus, the Plan Document gives the Board of Trustees and the plan administrator discretion to administer the plan. Therefore, the court will review the trustees' decision to deny coverage for Ryan Rampetsreiter's physical therapy under the arbitrary and capricious standard.

Review under the arbitrary and capricious standard is "extremely deferential," the "least demanding form of judicial review." Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1107 (7th Cir. 1998). The plan administrator's "decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." Semien v. Life Ins. Co. of North America, 436 F.3d 805, 812 (7th Cir.2006) (quoting Trombetta v. Cragin Federal Bank for Sav. Employee Stock Ownership Plan, 102 F.3d 1435, 1438 (7th Cir. 1996). Thus, a decision is unlikely to be reversed unless it is "downright unreasonable." Donato v. Metropolitan Life Ins. Co., 19 F.3d 375, 380 (7th Cir. 1994) (quoting Fuller v. CBT Corp., 905 F.2d 1055, 1058 [7th Cir. 1990]).

In this case, the Health Plan provides health insurance coverage for active eligible employees and their eligible dependents. (Trad Aff., Exh. 2 at II-1). The Plan Document and the Summary Plan Description define dependents as "the eligible employee's spouse and

unmarried child or children." (Trad Aff., Exh. 3 at 56). Both further define "child" or "children" to include

> stepchildren who are children by a former marriage of the eligible employee's spouse and who are solely dependent on the eligible employee for support, unless evidence is presented to the Fund that the divorce judge obligates the natural parent(s) for medical bills and they are properly claimed by the eligible employee on IRS tax filings.

(Trad Aff., Exh. 2 at I-4, 5; Exh. 3 at 57).

Ryan Rampetsreiter is a child "by a former marriage of the eligible employee's spouse." He is not, however, "solely dependent on the eligible employee for support." The undisputed facts establish that Ryan's father, Tom Rampetsreiter, was obligated to provide child support for Ryan until Ryan graduated from high school in 2004. Although Mr. Rampetsreiter failed to fulfill his obligation, he did make a "few" child support payments in 2003, the year at issue in this case.

The undisputed facts further establish that on December 11, 2003, the Health Fund mailed a letter to Mr. King, which explained that coverage was denied for his stepchildren, including Ryan, because:

> The Wisconsin Pipe Trades Health Fund covers stepchildren when the child is solely dependent on the eligible employee for support and is properly claimed by the employee on IRS tax filings. This Plan definition is further described on page 57 of your Summary Plan Description (SPD).

(King Dep. at 7, Exh. 2). Mr. King appealed the denial of coverage, which the Board of Trustees denied. In a letter, the Board explained its reason for denying the appeal:

> Based upon the divorce decree requiring the natural father to provide health coverage and the Plan's definition of stepchildren excluding children provided coverage by a natural parent(s) under a divorce decree (see dependent definition paragraph D), the Trustees have denied your appeal.

(King Dep. at 34-35, Exh. 6; Trad Aff., Exh. 7).

- 13 -

"Under an arbitrary and capricious review, an 'insurer's decision prevails if it has rational support in the record.'" Semien, 436 F.3d at 812 (quoting Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 409 [7th Cir. 2004]). In this case, such "rational support" exists. Ryan was not solely dependent on Mr. King for support. Moreover, even if it is assumed that he was solely dependent on Mr. King (as the Board apparently did on appeal), the divorce judgment obligated Mr. Rampetsreiter to pay his children's medical bills. Paragraph 5 of the Marital Settlement Agreement states:

> That the respondent shall be liable for all hospital, medical, dental, orthodontist and any other related expenses not covered by insurance for the minor children of the parties.

(Trad Aff., Exh. 4 at 2).

The plaintiffs assert, however, that the Health Fund should be estopped from denying coverage for Ryan Rampetsreiter's physical therapy. The court of appeals for this circuit has "held that 'estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA'" Bowerman v. Wal-Mart Stores, inc., 226 F.3d 574, 586 (7th Cir. 2000) (quoting Black v. TIC Investment Corp., 900 F.2d 112, 115 [7th Cir. 1990]). The court has declined to decide whether estoppel applies to other types of benefit plans. See Downs v. World Color Press, 214 F.3d 802, 806 (7th Cir. 2000).

However, even assuming the availability of estoppel to the plan at issue here, the plaintiffs fail to establish the elements of estoppel. ERISA estoppel claims require a plaintiff to show 1) a knowing misrepresentation; 2) made in writing; 3) with reasonable reliance on that misrepresentation; 4) to the plaintiff's detriment. Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (7th Cir. 1999).

- 14 -

In this case, the plaintiffs cannot establish a knowing misrepresentation by the Health Fund made in writing. Although the information given to the plaintiffs by the Health Fund employee was inaccurate, it was neither a knowing misrepresentation nor made in writing. See Brosted v. Unum Life Ins. Co. of America, 421 F.3d 459, 465 (7th Cir. 2005). The court of appeals for this circuit has "stressed repeatedly that equitable estoppel cannot dilute the rule forbidding oral modifications to an ERISA plan." Bowerman, 226 F.3d at 586. The court has "simply rejected the claim that 'bad advice delivered verbally entitles plan participants to whatever the oral statement promised, when written documents provide accurate information.'" Id. (quoting Frahm v. Equitable Life Assur. Soc. of U.S., 137 F.3d 955, 961 [7th Cir. 1998]).

The court also concludes that to the extent the plaintiffs' complaint makes additional claims, for example, for further physical therapy or emotional distress, the defendant's motion for summary judgment as to those claims will be granted. The plaintiffs have not filed an administrative claim on any such claims. See Jin Zhou v. Guardian Life Ins. Co. of Am., 295 F.3d 677, 679 (7th Cir. 2002) ("As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies.").

The court is not unsympathetic to the plaintiffs' position. However, the defendant's decision denying coverage to Ryan Rampetsreiter has rational support in the record and equitable estoppel has not been established. Accordingly, the defendant's motion for summary judgment will be granted.

- 15 -

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 25) be and hereby is **granted**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2007.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge